UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:22-CR-00073-LK |
| Plaintiff, | ORDER DENYING MOTIONS TO DISMISS |
| v. | |
| DONTE MCCLELLON, | |
| Defendant. | |

Defendant Donte McClellon's jury trial is scheduled to commence on January 8, 2024. The Government has charged him with three counts of Wire Fraud and two counts of Bank Fraud in connection with his submission of allegedly false and misleading Paycheck Protection Program ("PPP") loan applications to various financial institutions.[1] Originally indicted in May 2022, Mr. McClellon will have spent over 19 months awaiting trial by the time a jury is impaneled early next month. He argues that this delay constitutes a violation of his speedy trial rights under both the

---

[1] The PPP was one source of relief under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. Under the PPP, Congress authorized up to $349 billion in forgivable loans to small businesses for job retention and other expenses. *See* Dkt. No. 174 at 1.

ORDER DENYING MOTIONS TO DISMISS - 1

Sixth Amendment and the Speedy Trial Act, and accordingly moves to dismiss all charges. Dkt. No. 165. Mr. McClellon also moves to dismiss as duplicitous Counts 4 and 5 of the December 2022 superseding indictment. Dkt. No. 166. Both motions are denied.

Although the Court agrees that this case involves a sizeable delay, that delay does not render Mr. McClellon's trial unconstitutional. He is largely to blame for the seven continuances spread over several generations of defense counsel in this case. As for his second motion, the Court disagrees that Counts 4 and 5 of the December 2022 superseding indictment were duplicitous. The Ninth Circuit has long approved of conjunctive indictment allegations when the offense at issue is defined in the disjunctive. In any event, though, the November 2023 second superseding indictment cured any concerns about duplicitous counts.

# I.   BACKGROUND

The Court first recounts the lengthy procedural history of this case to contextualize Mr. McClellon's speedy trial arguments.

## A.   May–August 2022: The Indictment, Appointment of Ms. Pai-Thompson, and First Trial Continuance

A federal grand jury indicted Mr. McClellon on May 20, 2022 for three counts of Bank Fraud in violation of 18 U.S.C. § 1344. Dkt. No. 6 at 4–7. The Government alleged that Mr. McClellon submitted three fraudulent PPP loan applications with false supporting documentation to financial institutions on behalf of three registered corporate entities he owned: (1) an application sent to Bank One in the name of Frostlake, LLC on May 12, 2020; (2) an application sent to Bank Two in the name of Skylake, LLC on June 11, 2020; and (3) an application sent to Bank Three in the name of Cannonlake, LLC on June 23, 2020. *Id.* at 2, 7. Mr. McClellon allegedly obtained a total of "at least $500,948" in PPP loans as a result. *Id.* at 5. The Court appointed Assistant Federal Public Defender Vanessa Pai-Thompson as defense counsel, Dkt. No. 5, and on June 2, 2022, Mr.

1    McClellon made his initial appearance, Dkt. No. 14. He pleaded not guilty to all charges. *Id.* United

2    States Magistrate Judge Brian Tsuchida set Mr. McClellon's jury trial for August 1, 2022, and the

3    parties agreed to his temporary release on an appearance bond pending a detention hearing. *Id.*;

4    *see also* Dkt. No. 15 (appearance bond). Following a brief continuance of that hearing, Dkt. No.

5    17, the Government successfully moved for pretrial detention of Mr. McClellon, Dkt. Nos. 16, 18,

6    20–21.

7            Ms. Pai-Thompson soon thereafter moved to continue trial to October 2022. Dkt. No. 26

8    at 1.[2] Although the Government did not oppose the continuance, Mr. McClellon did—a

9    disagreement that led Ms. Pai-Thompson to request a hearing "so that he [could] be heard" on the

10   matter. Dkt. No. 26 at 1. Ms. Pai-Thompson flagged the fact that SeaTac Federal Detention Center

11   was currently "locked down due to a COVID-19 outbreak at the facility, with legal visits

12   suspended," and noted her own recent battle with a COVID-19 infection that left her sidelined for

13   several days. *Id.* at 2. Beyond this, though, Ms. Pai-Thompson cited as bases for a trial continuance

14   (1) "the potential gravity" of the charges should Mr. McClellon be convicted; (2) the Government's

15   four discovery productions totaling over 4,000 "pages or files," which included "materials that are

16   time-intensive to review (e.g., taped recordings and financial records)"; (3) counsel's unfamiliarity

17   with the FPD's then-new discovery review platform; and (4) the "record-intensive" nature of a

18   bank fraud case—namely, "banking, business, and Internal Revenue Service documents that

19   require specialized expertise to unwind." *Id.* at 5. Ms. Pai-Thompson further averred that she could

20   not adequately prepare for trial without the assistance of a forensic accountant. *Id.* And although

21   she had "located" one and was in the process of "putting a contract for services in place," that

22

23   _____

24   [2] Just days prior, Ms. Pai-Thompson moved for an extension of the pretrial motions deadline and indicated that she "anticipate[d] soon filing a motion to continue the trial date[.]" Dkt. No. 22 at 2. The Court granted this motion. Dkt. No. 23.

1  accountant estimated that it would take "a few weeks . . . to fully review the material and be
2  prepared to consult with the defense team." *Id.* ("Additional expert assistance may also be
3  required.").

4      The Court held a hearing on the motion with Mr. McClellon present. Dkt. No. 27; *see also*
5  Dkt. No. 46-1 (transcripts of July 7, 2022 hearing). Ms. Pai-Thompson assured the Court that this
6  was not "a situation where there [was] acrimony that ha[d] arisen from the attorney-client
7  relationship or a client who [was] trying to be obstructionist or in any way acting in bad faith[.]"
8  Dkt. No. 46-1 at 3. Rather, Mr. McClellon's "fundamental concern" was "the amount of time that
9  it took for this case to be charged and prosecuted in the first instance, and because of that, any
10 further delay fe[lt] unjust." *Id.* at 4. Ms. Pai-Thompson nonetheless reiterated that the defense team
11 needed more time and could not be ready by the August trial date: "[J]ust given the volume and
12 also the nature of the discovery in this case, being able to competently represent Mr. McClellon at
13 trial is going to require us to consult with expert witnesses." *Id.* at 4; *see also id.* at 6–7 ("So we
14 are doing everything we possibly can. I just simply don't believe that we can be ready by the
15 current trial date or sooner than the [October 2022] date we have requested[.]"); *id.* at 28–30
16 (explaining remaining pretrial tasks).

17     During the Court's colloquy with Mr. McClellon, however, he insisted that this is a "very
18 simple," "purely paper case" with "no fingerprints" or "videos." *Id.* at 20. Mr. McClellon further
19 alleged that the Government's attorney was "running her slanderous mouth by defaming [his]
20 name[.]" *Id.* at 21. In short, he "had enough" of the prosecutor: "Enough is enough. And any further
21 delay would be prejudic[ial] to my rights. You've had two years to make your case." *Id.*; *see also*
22 *id.* at 23–24 ("This has ruined my life. And I have asked my counsel to continue on the track to
23 trial, because I demand to speak my truth and speak the truth to the jury."). Although Mr.
24 McClellon understood that his counsel needed more time to prepare an adequate defense, he

wished to proceed to trial due to the "absolutely inhumane" conditions of his confinement. *Id.* at 24, 27–28.

The Court granted the motion and continued trial to October 24, 2022. *Id.* at 31–32; *see also* Dkt. No. 28 (order). In doing so, it made the following findings:

> Based on the facts set forth in the motion, the statements made during the hearing, and the record in this case, the Court finds that the ends of justice would best be served by granting the requested continuance. A continuance is necessary to ensure that the defense has adequate time to prepare effectively for trial. *See* 18 U.S.C. § 3161(h)(7)(B)(iv). The Court finds that these ends outweigh the best interests of the public and the defendant in a speedier trial. *See* 18 U.S.C. § 3161(h)(7)(A). The additional time requested is a reasonable period of delay, as defense counsel averred in the motion and during the hearing that she needs additional time to review and analyze discovery, investigate the matter, gather evidence material to the defense, consider possible defenses, confer with expert(s), research and draft pretrial motions, and prepare for trial. *See* Dkt. No. 26 at 5–6. A failure to grant the continuance would deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence, within the meaning of 18 U.S.C. § 3161(h)(7)(B)(iv). For these reasons, the failure to grant a continuance would also be likely to result in a miscarriage of justice within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i).

Dkt. No. 28 at 1–2. The Court also excluded the period between the prior trial date of August 1, 2022 and the new trial date of October 24, 2022 for purposes of computing the time within which Mr. McClellon's trial must commence under the Speedy Trial Act. *Id.* at 2. Meanwhile, in mid July 2022, Mr. McClellon successfully moved for a review of his detention order and was released on bond. Dkt. Nos. 30, 38; *see* Dkt. Nos. 39–40 (appearance bond and receipt for surrender of passport). And the Court granted him permission to travel to New York for a week to retrieve his "EpiPen, paperwork of potential legal relevance, and other personal belongings." Dkt. No. 41 at 1–2; *see* Dkt. No. 43 (order granting motion).

## B.   August–December 2022: The Second Trial Continuance and Appointment of Mr. Murphy as Co-Counsel

In late August 2022, Ms. Pai-Thompson moved to continue trial to January 2023. Dkt. No. 46 at 1. Mr. McClellon again opposed the continuance, and this time so did the Government. *Id.*

Ms. Pai-Thompson outlined four reasons why additional time was needed to prepare for trial: (1) the Government disclosed an additional 3,200 pages of discovery in mid-August in response to a trial subpoena, and none of this production was duplicative of earlier disclosures; (2) the defense needed to investigate and retain experts related to a new strategy implicating Mr. McClellon's mental health; (3) the case-assigned paralegal was leaving the FPD; and (4) the FPD was experiencing attorney staffing issues and counsel had been unable to secure co-counsel. *Id.* at 4–9, 11–12. Although the Government officially opposed a continuance, its brief was equivocal: "There is no wrong path for the Court on defense counsel's motion for a continuance[.]" Dkt. No. 50 at 1. The Government maintained that there was sufficient time for defense counsel to adequately prepare for trial because "[n]either th[e] recent discovery nor the case as a whole is so complex that it requires a monthslong delay[.]" *Id.* at 2; *see also id.* at 1–2 ("The productions include a single, 2,800-page document from the Washington State Employment Security Department that captures McClellon's responses to standard questions each time he filed an unemployment claim over several years. The document is repetitive, making it a fast read." (footnote omitted)).

On the other hand, however, the Government "d[id] not disagree" with the defense's characterization of this case as a "fraud case with significant financial discovery that may require expert input." *Id.* at 2. The Court could therefore grant the requested continuance without violating Mr. McClellon's statutory or constitutional speedy-trial rights. *Id.* Indeed, it was reasonable for the Court to conclude that withholding the requested continuance could deny defense counsel the reasonable time necessary for effective preparation. *Id.* The Government further opined that a continuance would not prejudice Mr. McClellon because "nothing in the record suggests the proposed delay . . . would hinder [his] defense." *Id.* (observing that Mr. McClellon was "at liberty pending trial").

1    The Court held another hearing with Mr. McClellon present. Dkt. No. 54; *see* Dkt. No. 60

2    (transcript of September 7, 2022 hearing). There, Ms. Pai-Thompson catalogued her ongoing

3    pretrial struggles given the FPD's staffing issues, trial conflicts with potential co-counsel, and the

4    practical realities of needing to train new attorneys and bring new paralegals up to speed. Dkt. No.

5    60 at 3–9; *see also id.* at 9 ("[I]n terms of the very paper-heavy components that go along with

6    preparing a case like this and getting everything ready, the timeline for our current trial date doesn't

7    feel workable."). She also noted that the defense had obtained 1,070 additional documents and,

8    given other outstanding requests, she expected that number to double. *Id.* at 10, 12. The upshot is

9    that this case was far more time consuming than she anticipated: "[W]orking through this case and

10   working through things with Mr. McClellon, given some of the issues that we are exploring, have

11   just proven to be far more time consuming than I expected[.]" *Id.* at 10. The Government reiterated

12   its opposition to a continuance based on the fact that it was ready for trial in October and had been

13   preparing for the current trial date. *Id.* at 13. However, it conceded that Ms. Pai-Thompson "ma[de]

14   good points with regard to staffing and expert issues," and again did not dispute that this is a

15   "complicated case." *Id.* ("We don't think that discovery is so complicated as to require months and

16   months, but, you know, it's not a case where there are a hundred pages of discovery.").

17   Mr. McClellon reiterated his belief that a continuance would violate his right to a speedy

18   trial in light of the Government's "defamatory statements made in the media" and law

19   enforcement's alleged "planting [of] prospective evidence in discovery" and "coaching [of]

20   prospective witnesses[.]" *Id.* at 17. Acting against counsel's advice, Mr. McClellon revealed that

21   he planned to assert a diminished capacity defense. *Id.* He also accused Ms. Pai-Thompson of

22   "caus[ing] the need for more time through unnecessary delay on [his] expert witness

23   examination[.]" *Id.* at 18. The Court then excused the Government and closed the proceedings to

24   the public to preserve Mr. McClellon's privileged communications and protect his rights while

1   permitting him to freely address the Court. *Id.* at 19–20. During the sealed portion of the hearing,

2   █████████████████████████████████████████████████████████████████

3   █████████████████████████████████████████████████████████████████

4   █████████████████████████████████████████████████████████████████

5   █████████████████████████████████████████████████████████████████

6   █████████████████████████████████████████████████████████████████

7   █████████████████████████████████████████████████████████████████

8   █████████████████████████████████████████████████████████████████

9   █████████████████████████████████████████████████████████████████

10  █████████████████████████████████████████████████████████████████

11  █████████████████████████████████████████████████████████████████

12  █████████████████████████████████████████████████████████████████

13  ██████████████████████████████

14      After the Government rejoined the hearing, the Court concluded that "significant

15  obstacles" prevented Ms. Pai-Thompson from adequately preparing for trial by October 24th. Dkt.

16  No. 60 at 20–21. These obstacles included "over 7,000 pages of discovery," the need to consult a

17  forensic accountant and other experts, and the FPD's staffing issues. *Id.* at 21–22. The Court

18  accordingly granted Ms. Pai-Thompson's motion and continued trial to February 6, 2023. *Id.* at

19  22; *see also* Dkt. No. 55 (order). And it made the following findings:

20      Based on the facts set forth in the motion, the statements made during the hearing,
        and the record in this case, the Court finds that the ends of justice would best be
21      served by granting the requested continuance. The additional time requested is a
        reasonable period of delay and a continuance is necessary to ensure that the defense
22      has adequate time to prepare effectively for trial, as defense counsel averred in the
        motion and during the hearing that she needs additional time to review and analyze
23      discovery, consider possible defenses, retain and work with experts, and gather
        evidence material to the defense. *See* Dkt. No. 46 at 12–13; *see* 18 U.S.C.
24      § 3161(h)(7)(B)(iv). The Court finds that these ends outweigh the best interests of

ORDER DENYING MOTIONS TO DISMISS - 8

the public and the Defendant in any speedier trial. *See* 18 U.S.C. § 3161(h)(7)(A). A failure to grant the continuance would deny the defense a reasonable time necessary for effective preparation for trial and other pretrial proceedings, taking into account the exercise of due diligence, especially in view of the volume of discovery, the complexity of the case, and the need to consider and consult with an additional expert. *See* 18 U.S.C. § 3161(h)(7)(B)(iv). For these reasons, the failure to grant a continuance would also be likely to result in a miscarriage of justice within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i).

Dkt. No. 55 at 2. The Court also excluded the period of delay from the prior trial date of October 24, 2022 to the new trial date of February 6, 2023 for purposes of calculating the time within which Mr. McClellon's trial must commence under the Speedy Trial Act. *Id.* Roughly a week after the Court granted the continuance, Assistant Federal Public Defender Gregory Murphy entered his appearance as co-counsel for Mr. McClellon. Dkt. No. 56.

**C.    December 2022–January 2023: A Superseding Indictment Issues, Mr. McClellon Abconds and is Arrested, First Counsel Withdraws, and Trial is Continued**

A grand jury returned a superseding indictment against Mr. McClellon on December 13, 2022. Dkt. No. 62. The Government now charged him with three counts of Wire Fraud in violation of 18 U.S.C. § 1343 and two counts of Bank Fraud in violation of 18 U.S.C. § 1344. *Id.* at 4, 7–8, 11. The wire fraud charges are premised on three electronic transmissions: (1) documents containing false information in support of a loan application for Frostlake LLC sent to Company One's server on May 7, 2020; (2) correspondence between Mr. McClellon (using the email address idontlikelawyers4u@gmail.com) and Company One via Google's server on May 8, 2020; and (3) a loan application containing false information and false certifications for Frostlake LLC sent to Company One's server on May 12, 2020. *Id.* at 7. As for the Bank Fraud charges, the Government alleged that Mr. McClellon submitted two fraudulent PPP loan applications with false supporting documentation to two financial institutions on behalf of two of his registered corporate entities: (1) an application sent to Bank One in the name of Skylake, LLC on June 11, 2020; (2) an application sent to Bank Two in the name of Cannonlake, LLC on June 23, 2020. *Id.* at 11. Judge

Tsuchida ordered that Mr. McClellon's conditions of release be continued as previously set—that is, he remained on bond pending trial. Dkt. No. 64. Mr. McClellon's arraignment was scheduled for January 5, 2023. Dkt. Nos. 65–66.

Shortly after the superseding indictment issued, however, Ms. Pai-Thompson and Mr. Murphy moved to withdraw and substitute new counsel. Dkt. No. 67. ████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████ *See generally* Dkt. No. 67-1 (sealed declaration). The Court referred this motion to United States Magistrate Judge S. Kate Vaughan. *See* December 20, 2022 Docket Entry. Although Judge Vaughan scheduled a hearing on December 22nd, Dkt. No. 68, the motion was re-referred to United States Magistrate Judge Michelle Peterson and the hearing rescheduled for December 28th because Mr. McClellon failed to appear. Dkt. No. 70; *see also* December 22, 2022 Docket Entry. This latter hearing proved fruitless as well when Mr. McClellon again failed to appear. Dkt. No. 73. Judge Peterson then issued a bench warrant for Mr. McClellon's arrest. *Id.*; *see also* Dkt. No. 77 (striking January 5, 2023 arraignment).

The Court struck the February 6, 2023 trial date and ordered the parties—including Mr. McClellon—to appear before the Court on February 6, 2023. Dkt. No. 80 at 2. In doing so, it made the following findings:

> "A busy district court can ill afford to block out time for a trial that very likely will not occur. Jurors, witnesses and attorneys will also be greatly inconvenienced if the trial date is retained when it is almost certain the defendant will not appear." *United States v. Fisher*, 137 F.3d 1158, 1163 (9th Cir. 1998). Here, Mr. McClellon has been absent or unavailable within the meaning of 18 U.S.C. § 3161(h)(3) since at least December 22, 2022 because either (1) "his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence" or (2) "his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." In addition, given defense counsel's pending motion to withdraw and Mr. McClellon's repeated failure to appear at scheduled hearings, the

Court finds that a failure to continue trial would result in a miscarriage of justice and would either unreasonably deny the defendant reasonable time to obtain counsel, or, should counsel's motion to withdraw be denied, would deny counsel for the defendant the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. *See* 18 U.S.C. § 3161(h)(7)(B)(i), (iv). Accordingly, the Court finds that that the ends of justice served by striking the trial date and requiring Mr. McClellon to appear in Court to establish a new trial date outweigh the best interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A).

*Id.* The Court also excluded "[t]he period of delay until the new trial date" for purposes of computing the time within which Mr. McClellon's trial must commence under the Speedy Trial Act. *Id.* Defense counsel meanwhile represented that Mr. McClellon failed to appear at the December 28th hearing because he did not receive the FPD's notice of that hearing and was hospitalized with an unspecified illness. Dkt. No. 81 at 1, 3–4. As it turns out, though, law enforcement located Mr. McClellon in New York. Dkt. No. 172 at 4. He self-reported in Seattle and was arrested on January 31, 2023. Dkt. No. 83.

## D.   February 2023: Ms. Scanlan and Ms. Murray are Appointed to Replace First Counsel, Trial is Continued, and Mr. McClellon Moves to Substitute Counsel

Judge Peterson ordered Mr. McClellon detained pending a bond revocation hearing[3] and, after hearing from defense counsel and Mr. McClellon, granted Ms. Pai-Thompson and Mr. Murphy's motion to withdraw. Dkt. No. 84; *see* Dkt. No. 85 (order granting withdrawal); Dkt. No. 86 (temporary detention order). Emma Scanlan and Kristen Murray were appointed to represent Mr. McClellon in their place. Dkt. Nos. 88, 93. At his arraignment, Mr. McClellon again pleaded not guilty to all charges and Judge Peterson set a new trial date of March 6, 2023. Dkt. No. 91. This date was short-lived. On February 9th, defense counsel moved to continue trial to May 2023 over Mr. McClellon's objection. Dkt. No. 96 at 1. Ms. Scanlan and Ms. Murray indicated that the Government did not oppose the requested continuance. *Id.* According to their motion, the

---

[3] Following an evidentiary hearing in March 2023, Judge Peterson revoked Mr. McClellon's bond and ordered him detained pending trial. Dkt. Nos. 113–14.

1  Government had made 19 productions totaling 9,052 "pages or files." *Id.* at 2 ("The discovery is

2  voluminous, includes complex financial documents, and will take a substantial amount of time to

3  review."). Indeed, they had been involved in the case "for approximately a week" when they filed

4  the motion to continue and were "still in the process of obtaining prior counsel's casefile[.]" *Id.* at

5  4. Ms. Scanlan and Ms. Murray averred that, "given the volume of discovery, the complexity of

6  the case, [and] the need for further expert work and consultation," they would not be ready to try

7  the case by March 6th. *Id.* at 5.

8       The Court held a hearing on the motion. Dkt. No. 98. According to Ms. Scanlan, Mr.

9  McClellon opposed the requested continuance for "several reasons." Dkt. No. 140 at 3. First, he

10  claimed that his detention conditions were "inhumane" because he had an ear infection and his

11  psychiatric medications were not being filled by prison staff. *Id.* at 3–4 ("He also believes he is

12  not being given enough food."). Second, Mr. McClellon believed that another prisoner in his unit

13  had a "contagious condition." *Id.* at 4. Third, U.S. Marshalls allegedly lost his "documents" when

14  he surrendered in January. *Id.* Fourth, Mr. McClellon maintained that the previous two

15  continuances "did not benefit him at all and only benefitted the prosecution" because the

16  Government "brought new charges and a superseding indictment." *Id.* And last, he believed that

17  his previous FPD attorneys had a conflict of interest, believed that the ex parte motion to withdraw

18  "made him look bad," and was unhappy with the FPD attorneys for choosing not to advance a

19  diminished capacity defense. *Id.*

20       Ms. Scanlan reiterated that while she and Ms. Murray "respect[ed] Mr. McClellon's desire

21  to go to trial quickly," the current trial date was "very aggressive" given the complexity of the case

22  and voluminous discovery. *Id.* at 5. They still needed to review 9,000 pages of discovery, assess

23  what the FPD's experts had done and determine whether new experts were necessary, and prepare

24  pretrial motions. *Id.* at 5–6. After the Court excused the Government and sealed the hearing, Mr.

ORDER DENYING MOTIONS TO DISMISS - 12

1   McClellon made an oral motion to substitute counsel █████████████████████

2   ████████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████

6   ███████████    The Court referred Mr. McClellon's oral motion to Judge Peterson to protect

7   potentially privileged communications. And it deferred ruling on the motion to continue trial

8   pending Judge Peterson's resolution of Mr. McClellon's motion. Dkt. No. 140 at 16; *see also* Dkt.

9   No. 98; February 14, 2023 Docket Entry.

10      Judge Peterson denied Mr. McClellon's motion to substitute counsel on February 17th.

11  Dkt. No. 101.[4] That same day, the Court granted defense counsel's motion and continued trial to

12  May 22, 2023. Dkt. No. 102 at 2. It made the following findings in doing so:

13      Based on the facts set forth in the motion, the statements made during the hearing,
        and the record in this case, the Court finds that the ends of justice would best be
14      served by granting the requested continuance. The additional time requested is a
        reasonable period of delay and a continuance is necessary to ensure that the defense
15      has adequate time to prepare effectively for trial, as a superseding indictment
        adding three counts of wire fraud was filed on December 13, 2022, and defense
16      counsel averred in the motion and during the hearing that they need additional time
        to review and analyze the over 9,000 pages of discovery (including complex
17      financial documents); obtain the assistance of experts; obtain and review the files
        of Mr. McClellon's previous counsel; and meet with him to prepare his defense.
18      *See* Dkt. No. 96 at 2, 4–5; Dkt. No. 62; *see* 18 U.S.C. § 3161(h)(7)(B)(iv). A failure
        to grant the continuance would deny the defense a reasonable time necessary for
19      effective preparation for trial and other pretrial proceedings, taking into account the
        exercise of due diligence, especially in view of the volume of discovery, the
20      complexity of the case, the need for expert consultation, and the recency of new
        counsel's appointment. *Id.* The Court finds that these ends outweigh the best
21      interests of the public and the Defendant in any speedier trial. *See id.* §
        3161(h)(7)(A). For these reasons, the failure to grant a continuance would also be

22

23  _____
    [4] Mr. McClellon subsequently moved the Court to review Judge Peterson's ruling. Dkt. Nos. 104, 111, 115. After a
    careful evaluation of the record, supporting declaration, and audio recording of Jude Peterson's ex parte hearing, the
24  Court denied Mr. McClellon's motion. Dkt. No. 117 at 1; *see also id.* at 3 ("The Court agrees with [Judge Peterson's]
    ruling for the reasons she stated on the record[.]").

ORDER DENYING MOTIONS TO DISMISS - 13

likely to result in a miscarriage of justice within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i).

*Id.* The Court also excluded the period of delay from the prior trial date of March 6, 2023 to the new trial date of May 22, 2023 for purposes of calculating the time within which Mr. McClellon's trial must commence under the Speedy Trial Act. *Id.* at 3.

**E.      March–April 2023: Ms. Scanlan and Ms. Murray Unsuccessfully Move to Withdraw Twice and Trial is Continued**

On March 2, 2023, Ms. Scanlan and Ms. Murray moved to withdraw at Mr. McClellon's insistence after he terminated their representation. Dkt. No. 106; *see* Dkt. No. 107 (sealed declaration). The Court referred this motion to Judge Peterson as well, who held an ex parte hearing a week later. Dkt. No. 108. There, ███████████████████████████████

1   ████████████████████████████████████ She then denied the motion to withdraw

2   ███████████████████████████ *See* Dkt. No. 108.

3       A month later, Ms. Scanlan and Ms. Murray once again moved to withdraw ████████

4   ██████████████████████████████████ Dkt. No. 118; *see* Dkt. No. 119

5   (sealed declaration). ████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████ The Court referred this motion to Judge Tsuchida. *See* April 6,

9   2023 Docket Entry. At the April 12, 2023 ex parte hearing, ████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████ Judge Tsuchida declined to permit withdrawal and

15  instead appointed a third attorney. Dkt. No. 123.

16      Defense counsel moved for another continuance just days later—this time requesting a new

17  trial date of October 30, 2023. Dkt. No. 124 at 1. Although Mr. McClellon opposed the motion as

18  usual, the Government did not. *Id.* at 1–2. Ms. Scanlan and Ms. Murray premised the need for a

19  continuance on the voluminous discovery disclosed by the Government, which by then totaled

20  10,900 bates entries (1,700 of which were generated after they joined the case). *Id.* at 5. Counsel

21  was also unable to access 800 pages of federal tax information—"a crucial component of the

22  case"—until the day before filing the motion to continue. Dkt. No. 124 at 5. Additionally, counsel

23  stressed that the bulk of the 170 hours they spent on this case went towards "navigating three

24  separate motions for new counsel that required client meetings, filings, legal research and court

hearings." *Id.* at 8. There were positives to report, too, though. Ms. Scanlan and Ms. Murray noted that "the foundations of trial preparation ha[d] begun," that they were in the process of reviewing and supplementing the FPD's external records, and that client meetings with Mr. McClellon were ongoing. *Id.* at 8–9. The requested trial date was premised on "the calculation that records review, investigation and expert work w[ould] be completed in approximately three to four months." *Id.* at 9 ("Counsel will then need to disclose the expert, if warranted, and research and prepare pretrial motions. The requested dates also take into account the parties' other trials, trainings, and leave.").

The Court held a hearing on the motion. Dkt. Nos. 125–26. After the Government was excused and the hearing sealed, ██████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ Once the Government rejoined the hearing, the Court summarized the extensive pretrial work that remained for the defense team, granted the motion, and continued trial to October 30, 2023. *Id.* at 25–30. It also issued a written order memorializing the following bases for a continuance:

> Based on the facts set forth in the motion, the statements made during the hearing, and the record in this case, the Court finds that the ends of justice would best be served by granting the requested continuance. The additional time requested is a reasonable period of delay and a continuance is necessary to ensure that the defense has adequate time to prepare effectively for trial in light of (a) the substantial time defense counsel has had to devote to three motions to withdraw and a substantive bond revocation hearing; (b) the complex nature of the case; (c) the recent productions of discovery provided to the defense; (d) the volume of discovery; (e) the need for additional expert work; and (f) the need for defense counsel to have an appropriate period to review discovery, consult with their client, and prepare a defense. *See* Dkt. No. 124 at 6, 8–10; *see* 18 U.S.C. § 3161(h)(7)(B)(iv). A failure to grant the continuance would deny the defense a reasonable time necessary for effective preparation for trial and other pretrial proceedings, taking into account the

1      exercise of due diligence, especially in view of the volume of discovery, the
2      complexity of the case, and the need for expert consultation. 18 U.S.C. §
    3161(h)(7)(B)(iv). The Court finds that these ends outweigh the best interests of
3      the public and the Defendant in any speedier trial. *See id.* § 3161(h)(7)(A). For these
    reasons, the failure to grant a continuance would also be likely to result in a
4      miscarriage of justice within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i).

5  Dkt. No. 127 at 2–3 (footnote omitted). In addition, the Court excluded the period of delay from

6  the date of its Order to the October 30, 2023 new trial date for purposes of computing the time

7  within which Mr. McClellon's trial must commence under the Speedy Trial Act. *Id.* at 3.

8  **F.     May–September 2023: Christopher Black is Appointed as Co-Counsel, Ms. Scanlan Withdraws, and Trial is Continued**

9      Christopher Black was appointed as Mr. McClellon's third attorney in late April 2023. Dkt.

10  No. 128. Three months later, in August 2023, Ms. Scanlan, Ms. Murray, and Mr. Black moved to

11  withdraw. Dkt. No. 133; *see* Dkt. No. 134 (sealed declaration). ████████████████████

12  ███████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████████

16  ████████████████████████████. The Court referred the motion to withdraw to Judge

17  Tsuchida. *See* August 8, 2023 Docket Entry. At the ex parte hearing on the motion, ████████

18  ███████████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████████

21  ███ Judge Tsuchida granted in part the motion and permitted Ms. Scanlan to withdraw. Ms. Murray

22  and Mr. Black were ordered to stay on the case. Dkt. No. 136.

23  _____

24  ███████████████████████████████████████████████████

On August 31, 2023, Ms. Murray and Mr. Black moved for a fifth trial continuance. Dkt. No. 137. They asked the Court to move trial to December 4, 2023. *Id.* at 1. Per usual, Mr. McClellon objected but the Government did not. *Id.* Counsel based their request for a five-week continuance (the "minimal length" necessary) on the defense expert's need for additional time: "[O]ne of the experts . . . has not been able to complete what s/he needs to do in a time frame that allows us to finalize decisions about Mr. McClellon's defense, prepare necessary and timely disclosures, and proceed to trial as currently scheduled." *Id.* at 5; *see also id.* at 7 ("[T]his scheduling issue is largely outside our control, and could only be ameliorated by seeking a different expert, which is impractical for many reasons. Some of these reasons are privileged, but one is that seeking a new expert would likely require even more delay."). At the request of Mr. McClellon, counsel also set forth his five specific objections to a continuance:

1.  Mr. McClellon does not waive his statutory right to a speedy trial;

2.  Mr. McClellon believes that he has been deprived of life, liberty and property due to his pretrial detention;

3.  Mr. McClellon believes that he has been deprived of due process of law;

4.  Mr. McClellon cannot eat what he wants while in pretrial detention and cannot get appropriate medications;

5.  Mr. McClellon believes that his pretrial detention constitutes cruel and unusual punishment.

*Id.* at 5–6.

The Court held another hearing. Dkt. Nos. 138, 141. There, Mr. Black reiterated much of what appeared in the motion to continue. He averred that defense counsel did not relish being in the position to have to ask for a continuance, but they had no choice because they were still working through issues with an important expert. Mr. Black also assured the Court that Mr. McClellon was aware of what the defense team was working on with the expert. As for the Government, it reaffirmed its non-objection given the short duration of the requested continuance

and the fact that the defense team had been working very diligently to meet the current trial date.

In keeping with previous hearings, the Court excused the Government and sealed the proceeding so that Mr. McClellon could air his objections. ██████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████

The Court granted counsel's motion and continued trial to December 4, 2023. *Id.* at 16–17. In doing so, the Court recognized that the continuance was critical to ensuring Mr. McClellon a fair trial and constitutionally adequate representation. *Id.* at 15–16. It made the following findings in a written order:

> Based on the facts set forth in the motion, the statements made during the hearing, and the record in this case, the Court finds that the ends of justice would best be served by granting the requested continuance. The additional time requested is a reasonable period of delay and a continuance is necessary to ensure that the defense has adequate time to prepare effectively for trial in light of the complex nature of the case and the need for additional expert work. *See* [Dkt. No. 137] at 2–5, 7–8. A failure to grant the continuance would deny the defense the reasonable time

1   necessary for effective preparation for trial and other pretrial proceedings, taking
into account the exercise of due diligence. 18 U.S.C. § 3161(h)(7)(B)(iv). The Court
2   finds that these ends outweigh the best interests of the public and the Defendant in
any speedier trial. *See id.* § 3161(h)(7)(A). For these reasons, the failure to grant a
3   continuance would also be likely to result in a miscarriage of justice within the
meaning of Section 3161(h)(7)(B)(i).

4

5   Dkt. No. 142 at 3. And finally, the Court excluded the period of delay from the date of its Order

6   to the December 4, 2023 new trial date for purposes of calculating the time within which Mr.

7   McClellon's trial must commence under the Speedy Trial Act. *Id.*

8   **G.    October–Early November 2023: Ms. Murray and Mr. Black Withdraw, Mr. Illa and
Mr. Camiel are Appointed, and Trial is Continued**

9         On October 20, 2023, approximately six weeks before trial, Ms. Murray and Mr. Black

10  filed another motion seeking permission to withdraw (the fifth since their appointment, and the

11  sixth overall). Dkt. No. 144; *see* Dkt. No. 145 (sealed declaration). ███████████████

12  ███████████████████████████████████████████████

13  ███████████████████████████████████████████████

14  ██████████████████████████████ The Court referred this

15  motion to Judge Tsuchida, and a hearing was scheduled for October 25th. *See* Oct. 23, 2023 Docket

16  Entry; Dkt. Nos. 147–48. The Government took no position on the motion. However, its attorney

17  conveyed her belief that Mr. McClellon's issues would persist regardless of who represented him.

18  And, if he were to receive new counsel, those attorneys would not be ready for trial on December

19  4th. ██████████████████████████████████████████

20  ███████████████████████████████████████████████

21  ███████████████████████████████████████████████

22  ███████████████████████████████████████████████

23

24  ██████████████████████████████████████████████

ORDER DENYING MOTIONS TO DISMISS - 20

1  ██████████████████████████████████████████████████████████████

2  ██ Judge Tsuchida accordingly granted their motion to withdraw. Dkt. No. 148.

3          Peter Camiel and Stephan Illa were appointed to represent Mr. McClellon on October 27,

4  2023—five weeks before trial. Dkt. Nos. 149–50. Mr. Illa promptly moved for a status conference

5  "to address the trial date and pretrial motions concerns." Dkt. No. 151 at 1. In his motion, Mr. Illa

6  indicated that he met with Mr. McClellon at FDC SeaTac and "told him that the trial date would

7  likely need to be continued" for two reasons: first, Mr. Illa had a trial conflict and was unavailable

8  on December 4th, and second, the new defense team needed "more than a month to review the

9  discovery and prepare pretrial motions." *Id.* at 2. Mr. McClellon refused to sign a speedy trial

10 waiver and disagreed that a continuance was necessary. *Id.* at 3. He did, however, allow Mr. Illa

11 to file the current motion for a status conference so that "the parties and the Court could determine

12 a reasonable date for trial." *Id.* The Court granted the motion and set a hearing for November 7th.

13 Dkt. No. 152.[7]

14         At the status conference with new counsel, Mr. McClellon attempted file "numerous

15 motions and a notice of appeal[.]" Dkt. No. 161 at 2. The Court explained to Mr. McClellon that

16 the motions were improper because he was represented by counsel and, under controlling Ninth

17 Circuit authority and the Local Criminal Rules, a represented defendant generally may not file

18 motions pro se. Dkt. No. 161 at 2. However, because Mr. McClellon's oral requests "relating to

19 his counsel and potentially proceeding pro se, with hybrid representation, and/or with four

20 attorneys were unclear," the Court referred them to a Magistrate Judge. *Id.* at 2–3. The Court also

21 heard from counsel with respect to remaining pretrial preparation and their ability to go to trial on

22

23 ██████████████████████████████████████████████████████████

24 [7] Mr. McClellon meanwhile filed three motions pro se: a Motion for Severance of Cases and Separate Trials, a Motion for Detention Hearing, and a Motion to Dismiss. Dkt. Nos. 153–54, 156. The Court denied all three without prejudice. Dkt. No. 157 at 1–2.

December 4th. *Id.* at 3. Based on Mr. Illa's and Mr. Camiel's representations, the Court found that more time was necessary to provide Mr. McClellon with constitutionally adequate representation. Dkt. No. 161 at 3. It therefore continued trial for an additional five weeks, to January 8, 2024, and made the following findings:

> Based on the statements made during the hearing, and after consideration of the record in this case, the Court finds that there are numerous significant obstacles that will prevent Mr. McClellon's newly appointed attorneys from being prepared for trial by December 4, 2023, and that the ends of justice would best be served by continuing the trial date so they can provide constitutionally adequate representation. *See* 18 U.S.C. § 3161(h)(7)(A). A failure to grant the continuance would deny the defense a reasonable time necessary for effective preparation for trial and other pretrial proceedings, especially in view of counsel's recent appointment, the volume of discovery, the complexity of the case, and the need to consider and consult with experts, taking into account the exercise of due diligence. 18 U.S.C. § 3161(h)(7)(B)(iv). The Court finds that these ends outweigh the best interests of the public and Mr. McClellon in any speedier trial. *See id.* § 3161(h)(7)(A). For these reasons, the failure to grant a continuance would also be likely to result in a miscarriage of justice within the meaning of Section 3161(h)(7)(B)(i). Furthermore, due to the time required to prepare for trial and prepare pretrial motions, this continuance would be necessary whether Mr. McClellon continues with current counsel, proceeds with new or additional counsel, or proceeds pro se or in a hybrid fashion.

Dkt. No. 161 at 3. The Court also excluded the period of delay from the date of its Order to the January 8, 2024 new trial date for purposes of computing the time within which Mr. McClellon's trial must commence under the Speedy Trial Act. Dkt. No. 161 at 4.

### H. Mid November–December 2023: Mr. McClellon Repeatedly Attempts to Remove Counsel and a Grand Jury Returns a Second Superseding Indictment

Two days later, the Court discharged the referral of Mr. McClellon's oral motion for self-representation after counsel indicated that Mr. McClellon wished to withdraw it. Dkt. Nos. 162–63. But Mr. McClellon soon filed another pro se motion ████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

ORDER DENYING MOTIONS TO DISMISS - 22

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████

7        The Court referred Mr. McClellon's pro se motion to Judge Tsuchida, who denied it in a

8 six-page order without a hearing. *See* Nov. 21, 2023 Docket Entry; Dkt. No. 168 (Judge Tsuchida's

9 order). ████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19        On November 29, 2023, a grand jury returned a second superseding indictment charging

20 Mr. McClellon with three counts of Wire Fraud in violation of 18 U.S.C. § 1343 and two counts

21 of Bank Fraud in violation of 18 U.S.C. § 1344(2). Dkt. No. 174 at 4, 7–8, 11. As discussed in

22 more detail below, the only material distinction between the second superseding indictment and

23 ──────────────────────

24 ████████████████████████████████████████████████████████

its predecessor is the Government's specification of Section 1344(2) for the Bank Fraud counts—an amendment aimed at addressing Mr. McClellon's Motion to Dismiss Counts 4 and 5. *See* Dkt. No. 166. Mr. McClellon's pretrial detention was ordered continued as previously set. Dkt. No. 176.

Amidst the parties' filing of their motions in limine—and on the same day that the Court set the pretrial conference—Mr. McClellon moved ex parte for a hearing and sought to replace Mr. Illa and Mr. Camiel. Dkt. No. 185 (sealed); *see* Dkt. No. 183 (setting pretrial conference). ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███ The Court referred this motion to Judge Tsuchida. *See* Dec. 6, 2023 Docket Entry. ███

████████████████████████████████████████████████████████

████ Judge Tsuchida denied the motion without a hearing. Dkt. No. 186 (sealed order).

Mr. McClellon pleaded not guilty to all charges at his arraignment. Dkt. No. 187. He also made an oral motion to substitute counsel. *Id.*; Dkt. No. 188. This motion was referred to Judge Tsuchida, *see* Dec. 7, 2023 Docket Entry, who denied it for the same reasons he denied Mr. McClellon's previous motions to discharge counsel, *see* Dkt. No. 189 at 1 ("The Court has not been presented with any basis that would support discharge of current counsel and appointment of new counsel.").[9]

---

[9] Mr. McClellon continues to file motions and briefs pro se even though he is represented by counsel. Dkt. Nos. 190–91, 196–97; *see* Dkt. Nos. 192, 199 (denying and striking submissions for violating Local Criminal Rule 62.2(b)(5)).

## II.   DISCUSSION

The Court begins with Mr. McClellon's motion to dismiss for violation of his speedy trial rights. It then turns to his motion to dismiss Counts 4 and 5 of the superseding indictment.

### A.   Motion to Dismiss - Speedy Trial Rights

Mr. McClellon argues that the delays in this case violate his statutory and constitutional speedy trial rights. Dkt. No. 165 at 1, 6. His arguments, however, are limited to the Sixth Amendment and make no mention of the Speedy Trial Act. *See generally* Dkt. No. 165. The Court nonetheless examines Mr. McClellon's rights under both the Sixth Amendment and the Speedy Trial Act, beginning with the latter. *See United States v. Lonich*, 23 F.4th 881, 891 (9th Cir. 2022) ("Criminal defendants enjoy certain protections from post-indictment delays. Some are statutory, codified in the Speedy Trial Act. Others are constitutional, rooted in the Sixth Amendment's Speedy Trial Clause." (citations omitted)); *United States v. Allen*, No. 2:23-CR-2-RMP-2, 2023 WL 6464126, at *6 (E.D. Wash. Oct. 2, 2023) ("Although Defendant did not make a Sixth Amendment argument in his brief, the Court will address the claim, because it is referenced in Defendant's motion.").

#### 1.   Speedy Trial Act

Congress enacted the Speedy Trial Act "[t]o give effect to" the Sixth Amendment right to a speedy and public trial. *United States v. Olsen*, 21 F.4th 1036, 1040 (9th Cir. 2022) (per curiam); *see also United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982) ("The Speedy Trial Act was enacted in part out of dissatisfaction with sixth amendment speedy trial jurisprudence, and to put more life into defendants' speedy trial rights."). The statute "serves not only to protect defendants, but also to vindicate the public interest in the swift administration of justice." *Bloate v. United States*, 559 U.S. 196, 211 (2010). To advance these dual interests, the Speedy Trial Act generally requires a criminal defendant's trial to begin within 70 days of the date on which the indictment

was filed or the date on which the defendant makes an initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). This timeline may be extended if the district court excludes certain periods of delay. *Id.* § 3161(h); *see Zedner v. United States*, 547 U.S. 489, 497 (2006) ("[T]he Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start."). If trial does not commence within the 70-day time limit as extended under Section 3161(h), the district court must dismiss the indictment on the defendant's motion. 18 U.S.C. § 3162(a)(2). Mr. McClellon bears the burden of proving that a Speedy Trial Act violation occurred. *Id.*; *see Allen*, 2023 WL 6464126, at *2. He fails to make the requisite showing here.

Mr. McClellon made his initial appearance on June 2, 2022. Dkt. No. 14.[10] In keeping with the requirements of the Speedy Trial Act, Judge Peterson scheduled his trial to begin 60 days later—on August 1, 2022. Dkt. No. 14. The Court thereafter continued trial seven times over the course of the next year and a half. The following table catalogues the delays in this case (some of which overlap) and the Court's basis for excluding them under the Speedy Trial Act:

---

[10] The Speedy Trial clock does not restart when the superseding indictment charges the same offenses as the original indictment. *United States v. Karsseboom*, 881 F.2d 604, 606–07 (9th Cir. 1989); *see also United States v. Clymer*, 25 F.3d 824, 827 n.2 (9th Cir. 1994) ("When a superseding indictment contains charges which, under double-jeopardy principles, are required to be joined with the original charges, Speedy Trial Act calculations begin from the date of the original indictment (or initial appearance)."). The clock does, however, restart for new charges in a superseding indictment that are not required to be joined with the original charges. *See United States v. Thomas*, 726 F.3d 1086, 1091 (9th Cir. 2013). The Government does not argue that the December 2022 superseding indictment—which dropped one count of Bank Fraud and added three counts of Wire Fraud—reset or otherwise established a separate Speedy Trial Clock. The Court therefore assumes without deciding that Mr. McClellon's June 2, 2022 initial appearance and arraignment marks the beginning of the 70-day clock for all charges in the operative (second superseding) indictment.

ORDER DENYING MOTIONS TO DISMISS - 26

| Date of Continuance Order | Excluded Delay | Grounds for Exclusion |
|---|---|---|
| July 8, 2022 (Dkt. No. 28) | August 1, 2022–October 24, 2022[11] | Section 3161(h)(7)(B)(i), (iv) |
| September 8, 2022 (Dkt. No. 55) | October 24, 2022–February 6, 2023 | Section 3161(h)(7)(B)(i), (iv) |
| January 6, 2023 (Dkt. No. 80) | February 6, 2023–New Trial Date (March 6, 2023)[12] | Section 3161(h)(3), (h)(7)(B)(i), (iv) |
| February 17, 2023 (Dkt. No. 102) | March 6, 2023–May 22, 2023 | Section 3161(h)(7)(B)(i), (iv) |
| April 25, 2023 (Dkt. No. 127) | April 25, 2023–October 30, 2023 | Section 3161(h)(7)(B)(i), (iv) |
| September 14, 2023 (Dkt. No. 142) | September 14, 2023–December 4, 2023 | Section 3161(h)(7)(B)(i), (iv) |
| November 8, 2023 (Dkt. No. 161) | November 8, 2023–January 8, 2024 | Section 3161(h)(7)(B)(i), (iv) |

Therefore, excluded from the 70-day clock is the July 8, 2022–January 8, 2024 delay period. And,

---

[11] The Court also determines that the period of delay from the date of this Order (July 8, 2022) to the new trial date (October 24, 2022) is excluded when computing the time within which the trial must commence under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(7)(A) (excluding from speedy trial clock "[a]ny period of delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel . . . if the judge granted such continuance on the basis of h[er] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."); Dkt. No. 28 at 1–2 (finding that the ends of justice served by the granting of counsel's requested continuance outweighed the best interests of the public and the defendant in a speedy trial because the defense needed "additional time to review and analyze discovery, investigate the matter, gather evidence material to the defense, consider possible defenses, confer with expert(s), research and draft pretrial motions, and prepare for trial," and "[a] failure to grant the continuance would [1] deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence, within the meaning of 18 U.S.C. § 3161(h)(7)(B)(iv)," and "[2] would also be likely to result in a miscarriage of justice within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i)"). Although the Court previously limited its ends-of-justice finding to the August 1, 2022–October 24, 2022 period, nothing prohibits it from making additional, retroactive findings at this juncture. The Supreme Court has indicated only that a district court must make all ends-of-justice findings (and speedy trial clock exclusions) "on the record by the time [the] district court rules on a defendant's motion to dismiss under § 3162(a)(2)." *Zedner*, 547 U.S. at 506–07.

[12] When the Court struck the February 6th trial date following Mr. McClellon's repeated failures to appear, it excluded "[t]he period of delay until the new trial date" and "requir[ed] Mr. McClellon to appear in Court" on February 6th "to establish a new trial date[.]" Dkt. No. 80 at 2; *see United States v. Fisher*, 137 F.3d 1158, 1163–64 (9th Cir. 1998) (although "[a] busy district court can ill afford to block out time for a trial that very likely will not occur," it can "still keep fugitives from benefiting from their own willful absence" by "striking the trial date but ordering the defendant to appear on the stricken trial date to establish a new trial schedule or for other appropriate purposes."). At Mr. McClellon's arraignment and bond revocation hearing on February 3, 2023, Judge Peterson set trial for March 6, 2023. Dkt. No. 91. Thus, the period of delay from January 6, 2023 to March 6, 2023 is excluded under Sections 3161(h)(3), (h)(7)(B)(i), and h(7)(B)(iv). After receiving notice that defense counsel intended to file a motion to continue trial, and upon agreement of the parties, the Court struck the February 6, 2023 hearing and later rescheduled it for February 14, 2023. Dkt. No. 92; Feb. 10, 2023 Docket Entry (setting hearing on motion to continue trial). Counsel filed the motion to continue trial on February 9, 2023. Dkt. No. 96.

ORDER DENYING MOTIONS TO DISMISS - 27

as the preceding procedural history illustrates, the Court was careful to make specific, detailed findings supporting all exclusions premised on subsection (h)(7)(A)'s ends-of-justice ground. *See United States v. Orozco-Barron*, 72 F.4th 945, 947–48, 956–57 (9th Cir. 2023); *United States v. Henry*, 984 F.3d 1343, 1350–53 (9th Cir. 2021). Mr. McClellon does not contend otherwise.[13]

The Court therefore finds no violation of the Speedy Trial Act.

2. Sixth Amendment

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. This clause aims "to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Marion*, 404 U.S. 307, 320 (1971) (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)). Where, as here, the time limits of the Speedy Trial Act have been met, there is a "strong presumption" of compliance with the Sixth Amendment. *United States v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995); *see also United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (it is "unusual" to find a Sixth Amendment violation when there is no Speedy Trial Act violation). However, the constitutional analysis is "more flexible" than the Speedy Trial Act inquiry. *United States v. Murillo*, 288 F.3d 1126, 1131 (9th Cir. 2002). A district court balances four factors to determine whether the Speedy Trial Clause has been violated: (1) the length of the delay; (2) the reasons for the delay, (3) whether the defendant asserted his rights; and (4) the prejudice to the defendant. *Lonich*, 23 F.4th at 893; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992). None of these factors are necessary or sufficient to find a deprivation of the

---

[13] Because Mr. McClellon does not challenge the reasonableness of any the delays specifically, the Court declines to piecemeal revisit each continuance order. It instead incorporates by reference the findings and conclusions set forth in each of those orders.

speedy trial right; rather, they must be considered together with any other relevant circumstances. *Lonich*, 23 F.4th at 893.

### (a) Factor One: Length of Delay

The first factor is a two-part "triggering mechanism" for the remainder of the analysis. *Id.* The defendant must first "show that the period between indictment and trial passes a threshold point of 'presumptively prejudicial' delay." *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993) (quoting *Doggett*, 505 U.S. at 652). If the defendant fails to do so, the inquiry ends and the district court does not examine the remaining three factors. *Id.* "If, however, the threshold showing is made, the court considers the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief." *Id.*

The 19-month delay between the original indictment and Mr. McClellon's trial is presumptively prejudicial. *See United States v. Gregory*, 322 F.3d 1157, 1161–62 (9th Cir. 2003) (delays approaching one year are presumptively prejudicial); *Lonich*, 23 F.4th at 893 (an eight-month day will trigger the full four-factor inquiry). Mr. McClellon argues that "[s]uch a long period of pretrial detention" is alone sufficient to warrant dismissal. Dkt. No. 165 at 7. The Court disagrees for two reasons. First, presumptively prejudicial delay is "not dispositively unconstitutional." *See Lonich*, 23 F.4th at 894 (while three-year delay was "substantial," it created only a presumption of prejudice; collecting cases involving permissible delays spanning between five and seven years). And the delay in this case is not "excessive." Indeed, the Ninth Circuit found that this first factor only slightly favored the defendants in cases involving similar or even longer delays. *See King*, 483 F.3d at 976 (two-year delay was "not excessive" and thus the first factor did "not weigh heavily" in defendant's favor); *Gregory*, 322 F.3d at 1162 (22-month delay "was not excessively long" and thus did not "weigh heavily" in the defendant's favor); *United States v. Tanh*

*Huu Lam*, 251 F.3d 852, 856, 857 (9th Cir. 2001) (15-month delay "slightly" favored defendant). Second, Mr. McClellon did not spend all 19 months in detention. He was released on bond in July 2022 and remained at liberty until January 2023, when he was arrested for failing to appear at a scheduled hearing. Mr. McClellon therefore will have spent 13 months in pretrial detention. As for any resulting prejudice, the Court addresses that under the fourth factor.

### (b) Factor Two: Reasons for the Delay

The second factor is the "focal inquiry." *King*, 483 F.3d at 976 (quoting *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739–40 (9th Cir. 1989)). There is no bright-line rule under this factor; rather, the district court should weigh "various considerations," including whether the Government or the defendant is more to blame for the delay. *United States v. Myers*, 930 F.3d 1113, 1119 (9th Cir. 2019). Mr. McClellon contends that the delay in this case is "not based on any actions by [him]" because "[h]e has always sought a speedy trial both when he was on bond and after being detained." Dkt. No. 165 at 7. The Court again disagrees.

The second factor generally "weighs heavily against" a defendant when the reason for delay is his counsel's need to prepare for a complex case. *Lam*, 251 F.3d at 856, 859 (defendant's "successive requests for continuances considerably diminish[ed]" the weight assigned to his assertion of speedy trial rights). The Court recognizes that Mr. McClellon ardently and repeatedly asserted his speedy trial rights throughout the pretrial delay in this case. It likewise notes that counsel pressed for each continuance over Mr. McClellon's objection. However, those continuances—and the attendant delay—must still be attributed to Mr. McClellon. The Government and defense counsel have consistently agreed that this case is complex. It involves voluminous bank records and IRS documents, the review of which requires the specialized expertise of a forensic accountant. *See id.* at 856 (noting that delay is more acceptable in "serious and complex" cases than it is in cases involving "ordinary street crime"). As the Court repeatedly

explained to Mr. McClellon, he is constitutionally entitled to receive—and his counsel ethically obligated to provide—competent representation at trial. And a fair trial is not possible unless counsel is adequately prepared. Mr. McClellon's subjective belief that an earlier trial was possible or that this case was straightforward cannot override his attorneys' legitimate assessments of the complexity of his case and their corresponding need to prepare. *Id.* at 858; *see also New York v. Hill*, 528 U.S. 110, 115 (2000) (noting that "only counsel is in a position to assess the benefit or detriment of the delay to the defendant's case," and "only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier"). Indeed, the Ninth Circuit has expressly warned against "setting up an irreconcilable conflict" between the speedy trial right and right to effective assistance of counsel, "which could subsequently be exploited by a defendant in a complex case." *Lam*, 251 F.3d at 858.

The delay in this case must be attributed to Mr. McClellon for another reason. His routine attempts to substitute or disqualify counsel significantly impeded counsel's efforts to timely and diligently prepare for trial. *See* Dkt. No. 172 at 11 (noting that a Magistrate Judge "heard at least six motions relating to McClellon's dissatisfaction with counsel"). Much of counsel's time was therefore spent addressing conflicts at ex parte hearings and attempting to mend the attorney-client relationship. The Court also specifically warned Mr. McClellon that delay was an inevitable consequence of replacing counsel. *See King*, 483 F.3d at 976 (noting that the defendant "substituted a new attorney halfway through the proceedings, which necessarily required the [trial] judge to allow extra time for new counsel to prepare"); *Nance*, 666 F.2d at 361 (second factor did not weigh in favor of finding a speedy trial right violation where the reason for the delay "was largely the need to preserve continuity of defense counsel"). Not to mention Mr. McClellon absconded to New York and failed to appear at two hearings—a decision that both forced the Court to strike the February 6, 2023 trial date and delayed his bond hearing and arraignment. These

collateral issues redirected valuable time and resources away from the merits of Mr. McClellon's case for considerable swaths of time.

Mr. McClellon followed the same pattern with each generation of his defense team: ███

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ And, by extension, he may not now

benefit from the delays associated with litigating the issue. *See Myers*, 930 F.3d at 1119 ("When a defendant causes a post-indictment delay, the defendant is deemed to have waived the right to a speedy trial."); *Allen*, 2023 WL 6464126, at *6 (second factor weighed against defendant because the delay was due at least in part to resolving the "numerous motions" he filed).

Nor is this a case in which the Government acted in bad faith, made a deliberate attempt to delay trial to hamper the defense, or even acted negligently. *See Myers*, 930 F.3d at 1119. The Government opposed Ms. Pai-Thompson's second motion for a continuance because it was fully prepared to try Mr. McClellon in October 2022. And it thereafter remained ready for trial. The Government acquiesced to several continuances only because it knew that Mr. McClellon's attorneys could not competently represent him without additional preparation time. The Court has little trouble concluding that the Government proceeded with diligence at every juncture of the delay at issue. *See United States v. Alexander*, 817 F.3d 1178, 1182 (9th Cir. 2016) (per curiam)

1    ("If the government can show that the delay was wholly justifiable because it proceeded with

2    reasonable diligence, the defendant's speedy trial claim generally cannot succeed in the absence

3    of a showing of actual prejudice resulting from the delay.").

4         Mr. McClellon nonetheless suggests that the Government caused the delay because it

5    sought a superseding indictment "over six months after the initial charges and add[ed] additional

6    substantive charges[.]" Dkt. No. 165 at 7–8. He also blames the Government for its allegedly "slow

7    production of discovery," which "included thirty-one separate productions between May 23, 2022,

8    and October 27, 2023." *Id.* at 8. Neither argument is availing. First, the Government's decision to

9    later charge Mr. McClellon with Wire Fraud arising out of the same conduct as his Bank Fraud

10   charges is not in and of itself a constitutional violation. *See Gregory*, 322 F.3d at 1161. Mr.

11   McClellon fails to articulate how the new Wire Fraud charges, which—again—arise from the same

12   underlying facts and conduct, inflicted a material blow to counsel's trial preparation as of

13   December 2022. Defense counsel never sought a continuance in connection with the superseding

14   indictment. And, as the Government asserts, the superseding indictment "did not give rise to new

15   discovery or change [its] theory of McClellon's fraud." Dkt. No. 172 at 11.

16        With respect to the second contention, the Court agrees with the Government that its

17   numerous productions are indicative of its diligence and compliance with ongoing discovery

18   obligations, not negligence or intentional delay. *See id.* at 11–12 ("As discoverable material came

19   into the government's possession through ordinary trial preparation activities, such as conducting

20   witness interviews, issuing trial subpoenas, creating trial exhibits, refreshing record searches, and

21   collecting Jencks Act statements, the government promptly produced those materials."). Mr.

22   McClellon does not argue—let alone convincingly—that the Government withheld (either

23   intentionally or negligently) evidence that it could or should have disclosed at an earlier date. Nor

24   does he identify specific productions and explain why those disclosures led to an otherwise

1    avoidable delay.

2          *(c)  Factor Three: Assertion of Speedy Trial Rights*

3          The third factor favors Mr. McClellon. A defendant who expressly asserts his speedy trial

4    right before the district court preserves the right even if his attorney moves for a continuance. *Lam*,

5    251 F.3d at 858. But the mere fact of proper, timely assertion of the right does not per se warrant

6    dismissal of the indictment. *United States v. Turner*, 926 F.2d 883, 889 (9th Cir. 1991). In fact, the

7    Court assigns only slight weight to this factor for the reasons discussed above. *Gregory*, 322 F.3d

8    at 1162 & n.4. Mr. McClellon's desire to immediately proceed to trial must yield to counsel's

9    reasonable assessments of the preparation time necessary to competently represent him. Moreover,

10   any weight inherent in Mr. McClellon's repeated assertion of his speedy trial right is undercut by

11   his otherwise dilatory conduct. *Cf. United States v. Loud Hawk*, 474 U.S. 302, 314–15 (1986)

12   (defendants' assertion of their speedy trial rights needed to "be viewed in the light of [their] other

13   conduct"; they "consumed six months by filing indisputably frivolous petitions for rehearing and

14   for certiorari," and "filled the District Court's docket with repetitive and unsuccessful motions").

15         *(d)  Factor Four: Prejudice*

16         The fourth and final factor counts against Mr. McClellon. "The amount of prejudice a

17   defendant must show is inversely proportional to the length and reason for the delay." *Alexander*,

18   817 F.3d at 1183. And where, as here, the defendant is responsible for the delay, he bears a "heavy

19   burden" of demonstrating actual prejudice. *Lam*, 251 F.3d at 859; *see also Gregory*, 322 F.3d at

20   1162–63 (noting that presumptive prejudice is but one consideration; 22-month delay was not long

21   enough to excuse defendant from demonstrating actual prejudice). "Actual prejudice is typically

22   demonstrated in three ways: oppressive pretrial incarceration, anxiety and concern of the accused,

23   and the possibility that the accused's defense will be impaired." *Gregory*, 322 F.3d at 1163

24   (cleaned up). Prejudice to the defense is the "most serious" of these three categories. *Lam*, 251

ORDER DENYING MOTIONS TO DISMISS - 34

1   F.3d at 860 (quoting *Barker v. Wingo*, 407 U.S. 514, 532 (1972)).[14]

2       Mr. McClellon advances two theories of actual prejudice. He first claims that he "lost the

3   testimony" of his mother, who unexpectedly passed away in May 2023. Dkt. No. 165 at 9. Mr.

4   McClellon represents that his mother was a "key fact witness" with "direct knowledge about his

5   employment, his business entities, and his state of mind during the relevant time period." *Id.* ("Mr.

6   McClellon has lost a witness with firsthand personal knowledge of facts relevant to his lack of

7   intent to defraud."). The Government counters that Mr. McClellon's "generic, wholly

8   unsubstantiated" characterization of his mother's testimony "is too dubious to establish prejudice."

9   Dkt. No. 172 at 13 ("McClellon's mother never provided a statement or other information to law

10  enforcement regarding her knowledge of McClellon's business activities, which presumably she

11  would have done if she possessed material exculpatory evidence[.]").

12      The Court agrees with the Government. Determining how much the defense has been

13  impaired "cannot be proved easily." *Beamon*, 992 F.2d at 1014. This is especially true with respect

14  to hypothetical testimony from a deceased witness. *See Williams*, 782 F.2d at 1466 (prejudice to

15  defendant was "minimal and speculative" because it is "difficult to predict the effect of the death

16  of witnesses on a trial not yet held"). Mr. McClellon's self-serving statement that his mother was

17  a "key witness" is accordingly insufficient to establish prejudice.[15] Moreover, and as discussed

18  above, Mr. McClellon is primarily to blame for the delays in this case. The Government is not. *See*

19  *Beamon*, 992 F.2d at 1014 (the district court must "balance th[e] impairment with the degree of

20  the government's dalliance"). As the Government observes, "trial would have begun on February

21

22  [14] The Ninth Circuit has provided slightly conflicting guidance on this point. *See, e.g.*, *United States v. Williams*, 782 F.2d 1462, 1466 (9th Cir. 1985) (stating that prejudice to the defense "is not the primary concern of the speedy trial clause").

23  [15] Notably, during a June 2022 detention hearing, Judge Peterson observed that Mr. McClellon's mother did not "seem to know very much about what [he had] been doing over the past two years, or what type of employment [he] ha[d]." Dkt. No. 30-1 at 41; *see also* Dkt. No. 19 at 2 (first supplemental pretrial services report relaying information provided by Mr. McClellon's mother).

24

6, 2023—eight months after indictment—if he had not absconded to New York and failed to appear for court hearings, causing the trial date to be stricken." Dkt. No. 172 at 10. Mr. McClellon must shoulder the consequences of the delays in this case, including the loss of witness testimony.

Beyond this, Mr. McClellon contends that he was prejudiced by his year-long pretrial detention. Dkt. No. 165 at 9. He further urges the Court to consider the conditions of his confinement—namely, that FDC SeaTac "was in the midst of the Covid pandemic" and had "constant lockdowns" for a portion of his detention. *Id.* at 10. The Court lends little weight to this argument. Mr. McClellon's year in prison at best amounts to minimal prejudice. *Compare Clymer*, 25 F.3d at 832 (defendant "suffered significant actual prejudice" where he was incarcerated for the entire 522-day pretrial period), *with Barker*, 407 U.S. at 534 (prejudice was "minimal" where defendant spent 10 months in jail before trial), *United States v. Battle*, No. 21-50221, 2023 WL 2158807, at *1 (9th Cir. Feb. 22, 2023) (no "serious prejudice" from six-month pretrial incarceration), *and Allen*, 2023 WL 6464126, at *6 (although defendant experienced "an amount of anxiety and concern" during his nine-month pretrial incarceration, this factor did "not weigh heavily" in his favor). And even so, the Court concurs with the Government's observation that Mr. McClellon "bears responsibility" for his protracted pretrial incarceration. Dkt. No. 172 at 13. This responsibility is twofold: first, Mr. McClellon would have remained at liberty but for his December 2022 decision to violate the terms of his appearance bond; and second, the duration of his pretrial incarceration is a direct consequence of his frequent efforts to replace defense counsel.

(e) *Summary*

The totality of the circumstances support rejection of Mr. McClellon's Sixth Amendment claim. *See, e.g.*, *Williams*, 782 F.2d at 1465–66 (39-month delay with no government negligence and minimal showing of prejudice does not violate the Sixth Amendment). True, he is entitled to a presumption of prejudice under the first factor and has consistently asserted his speedy trial rights

under the third factor. But the second factor—i.e., the "focal inquiry" of the Speedy Trial Clause test—weighs heavily against Mr. McClellon. And he fails to establish sufficient actual prejudice under the fourth factor. The Court remains mindful that the speedy trial right "is among the most important protections guaranteed by our Constitution," and is not one "that may be cast aside" lightly. *Olsen*, 21 F.4th at 1049. Mr. McClellon's assertion of that right, however, cannot overcome his counsel's legitimate need for reasonable delays. Nor may he benefit from delays that are mostly attributable to his conduct.

The Court denies Mr. McClellon's motion to dismiss for violation of his speedy trial rights.

## B.      Motion to Dismiss Counts 4 and 5

Mr. McClellon's second motion fails too. He urges the Court to dismiss Counts 4 and 5 of the December 2022 superseding indictment because, according to him, these counts are duplicitous and therefore violate due process. Dkt. No. 166 at 2. Mr. McClellon contends that neither count specifies which subsection of Section 1344 he allegedly violated; instead, each count "charge[s] two separate offenses . . . based on violations of two distinct subsections, each with a different set of elements and requiring different proof at trial[.]" *Id.* at 5; *see also id.* at 3–4. The Bank Fraud statute is written in the disjunctive and identifies two ways that an individual can commit that offense:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; *or*

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344 (emphasis added). Counts 4 and 5 of the superseding indictment, however, allege Bank Fraud in the conjunctive:

1
2
3
4

> Beginning at a time unknown but not later than in or about May 2020 and continuing through at least June 2020, in King County, within the Western District of Washington, and elsewhere, the defendant, DONTE JAMAL MCCLELLON, knowingly devised and executed a scheme and artifice to defraud financial institutions participating in the PPP loan program *and* to obtain moneys, funds, assets, and other property owned by and under the custody and control of financial institutions participating in the PPP loan program by means of materially false and fraudulent pretenses, representations, and promises[.]

Dkt. No. 62 at 8 (emphasis added).

The superseding indictment does not violate due process. An indictment is considered duplicitous if a single count combines two or more different offenses. *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976) (one danger of duplicity is that a jury could convict a defendant on a count without reaching a unanimous verdict on all offenses in the count). But some offenses can be committed by alternative means. *United States v. Renteria*, 557 F.3d 1003, 1008 (9th Cir. 2009). And the Government may "charge different means of a crime connected by conjunctions in the indictment when the means are listed disjunctively in the statute." *Id.*; *accord United States v. Booth*, 309 F.3d 566, 572 (9th Cir. 2002). Mr. McClellon correctly notes that Section 1344(1) and (2) involve different elements. The former requires intent to defraud a financial institution, while the latter does not. *See Loughrin v. United States*, 573 U.S. 351, 357 (2014). These subsections, however, list alternative means of committing the same offense—bank fraud—and therefore may be alleged in the conjunctive without violating due process. *See United States v. Greene*, 842 F. App'x 364, 370 (11th Cir. 2021) (noting that Section 1344 provides alternative methods for establishing bank fraud); *United States v. Saintvil*, No. 22-10004, 2023 WL 3644976, at *4–5 (11th Cir. May 25, 2023) (although Section 1344(1) and (2) have different elements, "[i]t does not follow . . . that the two subsections therefore define different offenses altogether"). Every circuit to consider the issue has reached this conclusion. *See United States v. Crisci*, 273 F.3d 235, 239 (2d Cir. 2001) (collecting cases).

And even if Counts 4 and 5 of the superseding indictment were duplicitous, a defendant may still be convicted when "(1) the government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed." *United States v. Ramirez-Martinez*, 273 F.3d 903, 915 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc). The Government took the former route in this case. Counts 4 and 5 of the November 2023 second superseding indictment charge Mr. McClellon with Bank Fraud under Section 1344(2). Dkt. No. 174 at 11. The indictment's allegations now track the language of only that subsection:

> Beginning at a time unknown but not later than in or about May 2020 and continuing through at least February 2021, in King County, within the Western District of Washington, and elsewhere, the defendant, DONTE JAMAL MCCLELLON, knowingly carried out a scheme and artifice to obtain moneys, funds, assets, and other property owned by and under the custody and control of financial institutions participating in the PPP loan program, and insured by the Federal Deposit Insurance Corporation (FDIC), by means of materially false and fraudulent pretenses, representations, and promises[.]

*Id.* at 8.

This motion to dismiss is accordingly denied as well.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Mr. McClellon's Motion to Dismiss for Violation of Right to Speedy Trial, Dkt. No. 165, and Motion to Dismiss Counts 4 and 5, Dkt. No. 166.

Dated this 20th day of December, 2023.

Lauren King
United States District Judge

ORDER DENYING MOTIONS TO DISMISS - 39