UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:22-CR-00073-LK |
| Plaintiff, | |
| v. | ORDER ON REMAINING MOTIONS IN LIMINE |
| DONTE MCCLELLON, | |
| Defendant. | |

This matter comes before the Court on Defendant Donte McClellon's Motion *in Limine* to Exclude Evidence of Other Alleged Crimes, Wrongs, or Acts - Rule 404(b), Dkt. No. 181,[1] and the Government's Consolidated Motions *in Limine*, Dkt. No. 182.[2] Mr. McClellon's motion is granted in part, denied in part, and deferred in part. The Government's motions are granted in part and deferred in part.

---

[1] The party moving in limine must certify that he conferred in good faith with opposing counsel in an effort to resolve the evidentiary dispute, and the certification "must list the date . . . [of] the conference." LCrR 12(b)(7). Mr. McClellon's certification does not specify the date of the parties' telephonic conference. *See* Dkt. No. 181 at 2.

[2] Because a party moving in limine may not file a reply brief unless requested by the Court, LCrR 23.1(6), the Court does not consider the Government's reply in support of its consolidated motions in limine, Dkt. No. 193, except for factual clarification as stated herein. The Court cautions both parties that it expects strict adherence to the Local Criminal Rules and Federal Rules of Criminal Procedure in the future.

## I.   BACKGROUND

The Government plans to try Mr. McClellon before a jury for three counts of Wire Fraud in violation of 18 U.S.C. § 1343 and two counts of Bank Fraud in violation of 18 U.S.C. § 1344(2). Dkt. No. 174 at 4–11. It alleges that, in May and June 2020, Mr. McClellon submitted documents to lenders containing materially false and misleading statements and information in support of several fraudulent applications for Paycheck Protection Program ("PPP") loans. *Id.* at 2–11. Mr. McClellon purportedly obtained $500,948 in PPP funds on behalf of three corporate entities he owned and controlled: Frostlake, LLC; Skylake, LLC; and Cannonlake, LLC. *Id.* at 3, 5. According to the Government, Mr. McClellon falsified financial and other tax documents related to these entities and misrepresented their monthly payroll expenses, number of paid employees, operational status, type of operations, and revenues. *Id.* at 5–6, 8–10; *see also* Dkt. No. 195 at 2 (table listing allegedly false employee numbers and monthly payroll claimed for three companies). The Government further claims that none of Mr. McClellon's businesses had employees or payroll expenses. Dkt. No. 174 at 3. And, it contends, none of the businesses paid federal payroll taxes between at least January 2018 and December 2020. *Id.* at 3–4. Indeed, all three had been administratively dissolved as of May 2018. *Id.*; *see also* Dkt. No. 182 at 1 ("McClellon's PPP applications and the forms he submitted with them were false—each of McClellon's entities was a sham with no payroll, no employees, and no business operations.").

The parties have moved in limine to exclude certain evidence from the jury. More specifically, Mr. McClellon wishes to keep the Government from introducing testimony and evidence about his "lavish lifestyle and spending habits" under Federal Rules of Evidence 403 and 404(b). Dkt. No. 181 at 1–3. As for the Government, it contends that any evidence of lender negligence and profits is irrelevant and should be prohibited under Rules 401 and 403. Dkt. No.

1  182 at 2. It also moves for a judicial finding, pursuant to 26 U.S.C. § 6103(i)(4), that Mr.

2  McClellon's tax returns are relevant. *Id.*

3  ## II.   DISCUSSION

4  The Court first sets forth some general principles related to motions in limine. It then

5  addresses the parties' motions, beginning with Mr. McClellon's.

6  ## A.   General Principles

7  Parties may move "to exclude anticipated prejudicial evidence before the evidence is

8  actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see United States v. Heller*,

9  551 F.3d 1108, 1111–12 (9th Cir. 2009) (the district court's ruling on a motion in limine "gives

10  counsel advance notice of the scope of certain evidence so that admissibility is settled before

11  attempted use of the evidence before the jury"). But a district court enjoys "wide discretion in

12  determining the admissibility of evidence," *United States v. Abel*, 469 U.S. 45, 54 (1984), and may

13  amend, renew, or reconsider its rulings in limine in response to developments at trial, *Luce*, 469

14  U.S. at 41–42; *see Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (in limine rulings are not

15  binding on the district court because it may change its mind during trial).

16  Federal Rules of Evidence 401 and 403 generally guide the district court's analysis. *See*

17  *Houserman v. Comtech Telecomms. Corp.*, 519 F. Supp. 3d 863, 867 (W.D. Wash. 2021). The

18  district court must first consider whether the evidence at issue "has any tendency to make a fact

19  more or less probable than it would be without the evidence," and whether "the fact is of

20  consequence in determining the action." Fed. R. Evid. 401. If so, the evidence is relevant and

21  therefore generally admissible. *See* Fed. R. Evid. 402. But there are many exceptions to this general

22  rule. The district court may, for example, exclude relevant evidence if "its probative value is

23  substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the

24  jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

1    Relevance and prejudice "are determined in the context of the facts and arguments in a particular

2    case[.]" *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

3    **B.      Mr. McClellon's Motion in Limine**

4           Mr. McClellon argues that "[e]vidence that [he] led an extravagant lifestyle and spent lots

5    of money on high-end products and experiences" is inadmissible under Rule 404(b). Dkt. No. 181

6    at 3 ("Mr. McClellon's spending habits provide no evidence of knowledge, intent, motive, or

7    identity concerning the charges against him."). The Government disagrees. It maintains that

8    evidence of how Mr. McClellon spent the PPP funds is not "other act" evidence under Rule

9    404(b)(1), but "direct evidence of his scheme to defraud PPP lenders." Dkt. No. 195 at 7; *see also*

10   *id.* at 2 (arguing that Mr. McClellon's use of the PPP funds for personal expenses rather than

11   business payrolls—the purpose of PPP loans—is "evidence of both his fraudulent scheme and his

12   intent to defraud"). And even if Mr. McClellon's expenditure of the PPP funds is "other act"

13   evidence, the Government contends that such evidence is admissible under Rule 404(b)(2) because

14   it tends to prove his "scheme to defraud, intent to defraud, motive, [and] knowledge of falsity,"

15   and is not "remotely close to the category of barely relevant inflammatory evidence typically

16   subject to exclusion under Rule 403." *Id.* at 2; *see also id.* at 10–11.

17          The parties appear to be talking past one another to some degree. There is a critical

18   distinction between (1) specific evidence of how Mr. McClellon spent the PPP funds at issue and

19   (2) general evidence of Mr. McClellon's spending habits and purported "lavish lifestyle." *See*

20   *United States v. Chalhoub*, 946 F.3d 897, 908 (6th Cir. 2020) (distinguishing between "wealth-

21   related evidence that passes muster under Rule 403" and "evidence that impermissibly appeals to

22   class prejudice"). The Government suggests that it intends to offer the former:

23          In each PPP loan application, McClellon certified he would use PPP funds for
            employee payroll[.] . . . Instead, he spent the PPP funds on personal expenses, like
24          apartment rent, retail purchases, travel, personal training, and a gym membership.

> This evidence is not offered because it is lavish or extravagant; it is offered because it is demonstrably not payroll.

Dkt. No. 195 at 9; *see also id.* at 7 ("To obtain PPP funds, McClellon falsely claimed that he needed the money for payroll and falsely claimed that he had 27 employees to support. But instead of spending the PPP funds on payroll, he spent it on himself."). Such evidence is highly probative of whether Mr. McClellon knowingly devised a scheme or artifice to defraud (an element of wire fraud), and whether he knowingly executed a scheme or artifice to obtain money owned by or under the control of a financial institution by means of false or fraudulent pretenses or representations (an element of bank fraud). *See* 18 U.S.C. §§ 1343, 1344(2); Ninth Circuit Model Criminal Jury Instructions 15.35, 15.39 (Aug. 2023 Update). Indeed, in fraud prosecutions the Government routinely presents evidence that a defendant did not use obtained funds for their intended purpose. *United States v. Rude*, 88 F.3d 1538, 1549 n.10 (9th Cir. 1996) (approving the Government's use of a pie chart to depict how the defendant used fraudulently obtained funds); *see also, e.g.*, *United States v. Booth*, 309 F.3d 566, 575 (9th Cir. 2002) (that defendants received money from clients "purportedly for securing leases" but "promptly spent the money on themselves instead" was permissible circumstantial evidence of fraud); *United States v. Brutzman*, 731 F.2d 1449, 1452 (9th Cir. 1984) (defendant's misuse of funds "directly established the fraudulent nature of the scheme," and its probative value was not outweighed by its potential prejudicial effect), *overruled on other grounds by United States v. Charmley*, 764 F.2d 675, 677 n.1 (9th Cir. 1985).

And evidence of how Mr. McClellon spent the PPP funds is not subject to Rule 404(b). There are two situations in which "other act" evidence is "inextricably intertwined" with the alleged crime and therefore exempt from the requirements of Rule 404(b). *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). The first is when the evidence "constitutes

a part of the transaction that serves as the basis for the criminal charge." *Id.* The second is when the evidence is necessary to "a coherent and comprehensible story regarding the commission of the crime[.]" *Id.* at 1012–13. Evidence that Mr. McClellon used the PPP funds for personal expenses falls into both categories. To prove wire fraud and bank fraud, the Government must show that Mr. McClellon lied about the purpose for which he was seeking PPP loans, i.e., that he knowingly devised a scheme to defraud and knowingly executed a scheme to obtain money by means of false representations. That Mr. McClellon did not spend the PPP funds on payroll tends to show that he lied on his PPP loan applications to secure those funds. And it is difficult to envision the Government trying its case without evidence of how Mr. McClellon spent the PPP funds. As the Government notes, Mr. McClellon's purported plan to spend PPP funds on personal expenses unrelated to payroll "is *the essence* of his scheme to defraud." Dkt. No. 195 at 9. Indeed, a PPP loan recipient could only use the loan—and receive loan forgiveness—for certain business-related costs and expenditures. *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 1106, 134 Stat. 297, 297–301 (2020) (codified as amended at 15 U.S.C. § 636m); Keeping American Workers Paid and Employed Act, Pub. L. No. 116-136, §1102, 134 Stat. 281, 286–294 (codified as amended at 15 U.S.C. § 636(a)(36)). Evidence of Mr. McClellon's expenditures of the PPP funds is also relevant to prove his identity as the person who applied for and received the PPP loans. *See* Dkt. No. 195 at 9–10; Dkt. No. 207-4 at 8–12.

But generalized evidence of Mr. McClellon's "lavish lifestyle" and spending habits unrelated to expenditure of the PPP funds at issue is significantly less probative of intent, motive, and the alleged scheme to defraud, and carries a higher risk of unfair prejudice. *See S.E.C. v. Frost*, No. 8:19-CV-01559-JLS-JDE, 2022 WL 17327322, at *6 (C.D. Cal. Feb. 23, 2022) (evidence of a defendant's wealth and lavish spending habits is irrelevant and inadmissible absent a sufficient connection to the defendant's participation in criminal activity); *United States v. Holmes*, No. 5:18-

CR-00258-EJD-1, 2021 WL 2044470, at *4 (N.D. Cal. May 22, 2021) ("[E]vidence of an individual's lavish spending habits, without a connection to an individual's participation in criminal activity, is irrelevant."). Here, the Government can adequately show the jury that Mr. McClellon did not use the PPP funds to maintain the payrolls of his dissolved businesses with less inflammatory evidence—namely, evidence limited to his expenditure of the fraudulently obtained PPP funds. *See Old Chief v. United States*, 519 U.S. 172, 184–85 (1997) (the probative value of evidence may be calculated by comparing evidentiary alternatives); *United States v. McCandless*, No. 4:22-CR-00032-DCN-1, 2023 WL 7701456, at *5 (D. Idaho Nov. 15, 2023) (distinguishing between (1) generalized "lifestyle" evidence related to defendant's wealth and spending of money earned from sources other than the misappropriated construction loan and (2) evidence that defendant spent the loan money designated for the construction project on unrelated personal expenses; permitting the Government to present the latter category of evidence).

To the extent Mr. McClellon seeks an order excluding generalized "lavish lifestyle" evidence, his motion is granted in part and deferred in part. The Court reserves the right to revisit this issue on an item-by-item basis at trial, where it can weigh the probative value of what is being offered against the risk of presenting unduly prejudicial evidence. Mr. McClellon's motion is denied to the extent that he wishes to preclude the Government from offering evidence specific to his expenditure of the PPP funds at issue. Whether Mr. McClellon used the PPP loan funds for personal expenditures rather than payroll is a "question[] at the heart of this case." *McCandless*, 2023 WL 7701456, at *5. Thus, while "presenting an itemized list of the particular items [Mr. McClellon] is alleged to have purchased may present a small risk of unfair prejudice, the Court cannot say that risk substantially outweighs the probative value of the proposed evidence." *Id.*; *see also United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (Rule 403 "favors admissibility," and its application "must be cautious and sparing" because its "major function is

limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect" (quoting *United States v. Mills*, 704 F.2d 1553, 1560 (11th Cir. 1983))).

Mr. McClellon's motion in limine is granted in part, denied in part, and deferred in part.

**C.    The Government's Motion in Limine**

The Court now turns to the Government's motion to exclude evidence of lender negligence and profits. After that, it addresses the Government's request for a judicial finding that Mr. McClellon's tax returns are relevant.

1.    Lender Negligence

The Government contends that "evidence of the victim-lenders' negligence is irrelevant under Rule 401 and unduly prejudicial under Rule 403 because victim negligence is neither a defense to bank fraud or wire fraud nor material to the falsity of McClellon's statements." Dkt. No. 182 at 5. Mr. McClellon objects to the Government's request to exclude this information as "overly broad" and argues that "[s]uch a ruling would preclude the defense from challenging the materiality of [his] alleged fraudulent representations." Dkt. No. 184 at 1 ("Materiality is an essential element of the charges of both Bank Fraud and Wire Fraud." (footnote omitted)); *see Neder v. United States*, 527 U.S. 1, 20 (1999) (materiality is an element of a "scheme or artifice to defraud" under the wire fraud and bank fraud statutes). According to Mr. McClellon, "[e]vidence of *industry-wide* standards is relevant and admissible to determine the intrinsic capabilities of a statement to influence a lender—that is, whether the statements at issue were material." Dkt. No. 184 at 3 (emphasis added) (internal quotation marks omitted).

The parties are again talking past one another. They appear to agree that Mr. McClellon may offer evidence on general industry practice and lending standards to disprove materiality, but may not present evidence of an individual lender behavior, i.e., a specific lender's purported

negligence or intentional disregard of information in approving a PPP loan. This comports with Ninth Circuit authority. *See United States v. Lindsey*, 850 F.3d 1009, 1011–12, 1015–16 (9th Cir. 2017). The Court reserves the right to address this issue as it arises at trial.

### 2. Lender Profits

The Government similarly maintains that evidence of any profit by the lenders is immaterial in a fraud case. Dkt. No. 182 at 9–10. In response, Mr. McClellon suggests that such evidence is relevant to materiality because lenders "were financially incentivized to provide each of the loans," and "[t]he tendency of a particular misrepresentation to influence another person to part with money . . . surely lies in tension with the financial incentive that person has to overlook the misrepresentation." Dkt. No. 184 at 6. Thus, Mr. McClellon argues, "[a] jury could certainly find that the greater the financial benefit due a lender, the less motivated he or she naturally will be to scrutinize a loan application for purported misrepresentations that would deny that benefit." *Id.* He accordingly urges the Court to permit evidence of lender "policies, procedures, and representations designed to entice borrowers to use a particular service to apply for loans . . . in light of the profits the lenders received in exchange for issuing the loans." *Id.* at 7.

Here again, Mr. McClellon is free to offer evidence or elicit testimony about general industry standards and practices bearing on materiality. He may not, however, offer evidence of the behavior of individual lenders. This encompasses a specific lender's motives (i.e., profits or financial incentives) for approving loans, its intentional disregard of relevant information in approving loans, and its policies, procedures, and representations designed to entice borrowers to use a particular service to apply for loans. *Lindsey*, 850 F.3d at 1015–16; *see also United States v. Kuzmenko*, 775 F. App'x 272, 274 (9th Cir. 2019) (the district court did not err in excluding expert testimony aimed at the "complicity and motives of the particular victim lenders"); *United States v. Powell*, 509 F. App'x 958, 967 (11th Cir. 2013) (whether lenders were motivated by profit or

1   did in fact profit from defendant's conduct was immaterial). The Court reserves the right to address

2   such evidence or argument at trial on an item-by-item basis.

3          3.  <u>Lender Wrongdoing as Impeachment Evidence</u>

4         Mr. McClellon also opposes the Government's motion because "the defense must be

5   allowed to cross examine to show bias by a lender who is under [criminal] investigation and is

6   now testifying for the government," and one of the lenders under criminal investigation is

7   "Company One"—an alleged victim of the wire fraud charges. Dkt. No. 184 at 6. "Company One"

8   is financial technology company Kabbage. *Compare* Dkt. No. 174 at 4–7, *with* Dkt. No. 209 at 1,

9   *and* Dkt. No. 207 at 4. The Government indicates that the witness who will testify about Mr.

10  McClellon's PPP loan from Kabbage now works for American Express, and "[t]here is no

11  allegation that this witness is being investigated or himself committed any wrongdoing." Dkt. No.

12  193 at 3. Furthermore, Kabbage has filed for bankruptcy. *Id.* at 3–4.

13        As an initial matter, that the Government investigated a lender in connection with

14  facilitation of PPP loan fraud is evidence of specific lender behavior—evidence that *Lindsey*

15  proscribes as irrelevant and inadmissible. And the Court will not permit backdoor attempts to

16  shoehorn such evidence before the jury under the pretext of impeachment. Moreover, any tendency

17  that evidence might have to suggest bias on the part of the ex-employee is substantially outweighed

18  by a risk of confusing the issues and the jury. Fed. R. Evid. 403; *cf. United States v. Benchick*, No.

19  13-20453, 2015 WL 3464091, at *3 (E.D. Mich. June 1, 2015) (argument and evidence that lender

20  engaged in control fraud "would create a substantial danger of unfair prejudice, confusing the

21  issues, and misleading the jury"). The Court nonetheless defers its final ruling on this issue until

22  trial. The parties should, however, be prepared to discuss the issue at the pretrial conference.

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

4.   Section 6103(i)(4)(A)(i) Relevance Finding for Tax Returns

The Government last requests a judicial finding that Mr. McClellon's 2019 and 2020 tax returns are probative of an issue relevant to establishing the charged offenses. Dkt. No. 182 at 10. Mr. McClellon does not oppose such a finding. *Id.* at n.3.

A tax return or taxpayer return information may be disclosed and used in a judicial proceeding pertaining to enforcement of a federal criminal statute "if the court finds that such return or taxpayer return information is probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party." 26 U.S.C. § 6103(i)(4)(A)(i). The Court concludes that Mr. McClellon's 2019 and 2020 tax returns are relevant to establishing both the wire fraud and bank fraud counts. In support of his PPP loan applications, Mr. McClellon submitted 2019 and 2020 Schedule Cs that he allegedly filed with the IRS on behalf of Cannonlake, Skylake, and Frostlake. Dkt. No. 182 at 10. As it turns out, however, there were apparently no Schedule Cs attached to the Form 1040 that Mr. McClellon filed with the IRS in 2019. *Id.* And the Government asserts that the 2019 Form 1040 is a two-page document in which Mr. McClellon "claims no income and takes the standard deduction." *Id.* With respect to his 2020 tax returns, the Government similarly contends that Mr. McClellon filed Schedule Cs with the IRS on behalf of his three companies, but the documents "conflict with representations he made to banks about the status of [those] entities." *Id.* at 10–11. The 2020 Schedule Cs filed with the IRS also purportedly differ "significantly" from one that he filed in support of an unsuccessful PPP loan application. *Id.* at 11. Thus, the Court agrees that Mr. McClellon's 2019 and 2020 tax returns are relevant to the charged offenses because they could "show the falsity of [his] statements, his intent to defraud, and his knowledge of the scheme and his false claims." *Id.*

The Government's motions in limine are granted in part and deferred in part.

### III.   CONCLUSION

Mr. McClellon's Motion *in Limine* to Exclude Evidence of Other Alleged Crimes, Wrongs, or Acts - Rule 404(b) is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART. Dkt. No. 181. The Government's Consolidated Motions *in Limine* are GRANTED IN PART and DEFERRED IN PART. Dkt. No. 182.

Dated this 28th day of December, 2023.

Lauren King
United States District Judge